UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| VICENZO CASSINI, JORGE ZULUAGA, and JORGE JAIRALA<br><br>Plaintiffs,<br><br>v.<br><br>WORLDGATE VACATIONS LLC, formerly AD1 Vacation Team, LLC,<br><br>Defendant.<br><br>INTERNAL REVENUE SERVICE (Statutory notice pursuant to 26 USC § 7434d) | Case No. 6:18-cv-299-Orl-28DCI |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, VICENZO CASSINI, JORGE ZULUAGA, and JORGE JAIRALA by and through the undersigned counsel, hereby file their Complaint against the above-named Defendant, WORLDGATE VACATIONS LLC, formerly AD1 Vacation Team, LLC.

### NATURE OF THE CASE

1. This is an action brought by Plaintiffs VICENZO CASSINI, JORGE ZULUAGA and JORGE JAIRALA (hereafter "Plaintiffs") against their former employer, Defendant WORLDGATE VACATIONS LLC, formerly AD1 Vacation Team, LLC (hereafter referred to as "Defendant"), for overtime and minimum wage violations of the Fair Labor Standards Act of 1938, 29

U.S.C. §201, *et seq.* ("FLSA"), to recover unpaid wages pursuant to Florida Law, and to recover civil damages for fraudulent filing of information returns in violation of 26 U.S.C. §7434(a).

2. During the term of Plaintiffs' employment, Defendant misclassified Plaintiffs as independent contractors, failed to pay Plaintiffs the Federal minimum wage, failed to pay Plaintiffs for all hours worked in excess of forty in a workweek at 1.5 their regular rate of pay, failed to pay Plaintiffs for wages earned in the form of commissions, and failed to comply with its duties as a tax withholding and reporting agent with regards to Plaintiffs' earnings during their employment with Defendant.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction conferred by 29 U.S.C. §216(b), 28 U.S.C. §1331 and 26 U.S.C. §7434. This Court also has supplemental jurisdiction over Plaintiff's state law wage claim pursuant to 28 U.S.C. § 1367 because it arises from a common nucleus of operative facts and is so related to Plaintiff's federal claims, as to constitute the same case or controversy under Article III of the U.S. Constitution.

4. Venue is proper in the Orlando Division of the Middle District of Florida under Local Rule 1.02 of the Local Rules of the Middle District of Florida. Osceola County has the greatest nexus with the cause because it is the place where Plaintiffs provided services to Defendant and where Defendant conducted business.

## PARTIES

5. Plaintiff, VINCENZO CASSINI is a resident of Orange County, FL and a former employee of Defendant WORLDGATE VACATIONS LLC.

6. Plaintiff, JORGE ZULUAGA is a resident of Osceola County, FL and a former employee of Defendant WORLDGATE VACATIONS LLC.

7. Plaintiff, GEORGE JAIRALA is a resident of Lake County, FL, and a former employee of Defendant WORLDGATE VACATIONS LLC.

8. Defendant WORLDGATE VACATIONS LLC, formerly AD1 Vacation Team, LLC, is a corporation organized and existing under and by virtue of the laws of the State of Florida which is in the business of selling timeshares in resorts and has its principal place of business in Osceola County, Florida.

## COVERAGE

9. Defendant WORLDGATE VACATIONS LLC is an enterprise engaged in commerce or in the production of goods for commerce, as defined by 29 U.S.C. § 203, which enterprise is covered by the FLSA.

10. Defendant WORLDGATE VACATIONS LLC engages in interstate commerce or in the production of goods for commerce, by selling timeshares to tourists who reside in various different states other than Florida (and who reside outside of the United States); by regularly making such sales across state lines or outside the United States; by regularly accepting payments made across state lines and through checks and credit cards or other fund transfers issued by banks and credit card companies or

other lenders located across state lines (or outside the United States); by advertising their products across state lines; by maintaining websites viewed by the public across state lines; and by selling to persons who travel across state lines to purchase interval ownership interests or "timeshares" in resorts located across the United States and Worldwide.

11. Upon information and belief, Defendant's annual gross volume of sales exceeded $500,000/year at all relevant times.

12. Defendant WORLDGATE VACATIONS LLC was an employer within the definition of the FLSA, 29 U.S.C. § 203.

13. During the term of their employment, Plaintiffs were engaged in commerce and were therefore subject to the individual coverage of the FLSA. 29 U.S.C. § 206. Plaintiffs frequently and as an integral part of their jobs regularly accepted payment for the sale of timeshares through credit cards and checks or other fund transfers issued by banks or credit card companies located outside the State of Florida and were directly and individually involved in commerce as defined by the FLSA.

14. The services performed by Plaintiffs were essential, necessary, and an integral part of the business conducted by Defendant.

15. Plaintiffs were covered employees for purposes of the FLSA pursuant to 29 U.S.C. §§ 207 and 206, and an "other person" for purposes of 26 U.S.C. §7434(a).

## FACTUAL BACKGROUND

16. VICENZO CASSINI (employed from 2015 to 2017), JORGE ZULUAGA (employed from 2015 to 2016), and JORGE JAIRALA (employed in 2015) held a sales agent position at the time of separation.

17. Plaintiff's pay was commission-based or primarily commissioned-based.

18. Plaintiffs were non-exempt employees of Defendant.

19. Plaintiffs sold timeshares onsite at a resort and did not travel to visit customers or secure sales. Plaintiffs had their offices located at, and performed all their work at, the "Park Inn by Radisson Resort & Conference Center Orlando," located at 3011 Maingate Lane, Kissimmee, FL 34747, where the model hotel rooms were located and shown to potential tourist customers, on-site. Potential customers would visit this location in order to view a presentation given by Plaintiffs and view the on-site model apartment/hotel room. However, the timeshares sold by Plaintiffs, on-site, were for resorts located throughout the United States and Worldwide.

20. Plaintiffs were not part of a retail or service establishment, and/or their regular rate of pay did not exceed 1.5 times the applicable minimum wage for every hour worked in a workweek in which overtime hours were worked.

21. Plaintiffs were misclassified by Defendant as independent contractors.

22. The work Plaintiffs performed was an integral part of the Defendant's business, which consisted primarily of the sale of timeshares or "interval ownership interests" in various resorts.

23. Plaintiffs earned commissions based on the number of sales they made working for Defendant (and were supposed to be paid, by virtue of agreement, an hourly wage in the absence thereof), and did not have an opportunity for profit or loss based on the managerial or entrepreneurial skill of running a business of their own.

24. All overhead and investment in the operation in which Plaintiffs worked was made by Defendant, not by Plaintiffs, who used Defendant's equipment, facilities, supplies, and workplace to carry out their sales.

25. The work performed by Plaintiffs was sales work. It did not require special skills associated with a trade or business, or the initiative to operate or expand an independent business, nor independent business judgment. Rather, Plaintiffs' work consisted of making sales.

26. Plaintiffs' relationship with Defendant, while at will, was for an indefinite period of time and not for a particular project or definite term of duration as would be that of a contractor.

27. Defendant exercised control over the manner in which Plaintiffs performed their work.

28. Plaintiffs were economically dependent on Defendant, deriving almost the entirety of their income from their work with the Defendant.

29. Plaintiffs worked a set schedule during their employment with Defendant.

30. Defendant retained the right to control the manner and means by which Plaintiffs performed their work.

31. Plaintiffs did not engage in business distinct from that of Defendant.

32. Defendant set the commission rate of pay for Plaintiffs.

33. Defendant willfully misclassified Plaintiffs as independent contractors, rather than employees, despite the fact that the factual circumstances of the relationship between them demonstrated that Plaintiffs were in fact employees of Defendant, in an effort to avoid providing Plaintiffs with the minimum benefits and protections afforded to employees under Florida and Federal law.

34. Classifying Plaintiffs as independent contractors resulted in the evasion of federal and state payroll taxes and insurance, as well as other costs associated with the hiring of employees.

35. Defendant knew or should have known that it had a legal duty to provide Plaintiffs with W-2 Forms for each tax year during which Plaintiffs worked.

36. Defendants' actions were willful, and showed reckless disregard for its obligations under the Internal Revenue Code.

37. During the term of their employment with Defendant, Plaintiffs at times worked in excess of 40 hours in a workweek, and were not paid at 1.5 times their regular rate of pay;

38. During the term of their employment with Defendant, Plaintiffs at times performed work for which they were not paid at the federal statutory minimum wage rate.

39. Defendant had a practice of withholding 10% of the commissions earned by Plaintiffs and allocating it into a "reserve," controlled exclusively by Defendant, which Defendant referred to as a "banked commission" or "reserve."

40. Plaintiffs were paid commissions, minus that ten percent reserve. The reserve was kept to off-set amounts if a purchaser failed to make certain required payments. Plaintiffs' commissions on reserve would be "charged back" against the reserve. The independent contractor agreement provided:

> In the event independent Contractor is no longer engaged by Worldgate Vacations, irrespective of the reason for the termination of engagement, Independent Contractor shall be charged back for all sales upon which commissions have been paid in the event the purchase(s) has/have not made six (6) timely and consecutive monthly payments as well as the minimum down payment. The amount which exceeds the minimum wage of any commissions on sales which have not been paid at the time of termination shall be paid into and held in the reserve account and paid once and only in the event that six (6) consecutive and timely monthly payments are thereafter made. In no event shall such charge back obligations be applied so that such charge back would result in Independent Contractor receiving less than the applicable federal and Florida minimum hourly wage.

41. The above-described "reserve" or "banked commissions," were supposed to be returned to Plaintiffs upon 6 months of the termination of Plaintiffs' employment.

42. However, Defendant kept all of Plaintiffs' "banked" commissions and did not return them to Plaintiffs, essentially keeping their wages, and told Plaintiffs that all their reserved commissions had been lost because all of their sales

had been canceled. This was impossible because several customers of Defendant paid their purchases in full.

43. Defendant deliberately misrepresented the "reserve"" or "banked commission" balance to which Plaintiffs were entitled, and used it as an artifice to keep Plaintiff's wages.

44. Additionally, Defendant made Plaintiffs' commissions subject to a "charge back" if a customer canceled a purchase, or if a customer defaulted on the payment of a timeshare within 6 months of its purchase. It was agreed that Plaintiffs were supposed to be paid either an hourly wage, or their earned commissions, whichever was greater. If Plaintiff's commission was greater, they were not paid an hourly wage and were instead entitled to be paid a commission. However, upon default or cancelation, Plaintiffs' commission was charged back and deducted from their paychecks, and Plaintiffs were paid neither the commission nor the hourly wage, resulting in Plaintiffs not earning a minimum wage and not being paid wages they earned and were supposed to be paid for the time worked.

45. Defendant was aware that Plaintiffs were, at times, working in excess of forty (40) hours per week without receiving 1.5 times their regular rate of pay, and that, at times, Plaintiffs were not being paid at the federal minimum wage rate, but Defendant did not cure the ongoing FLSA violations.

46. Defendant's actions were willful and/or showed reckless disregard as to whether its conduct was prohibited by the FLSA.

47. Plaintiff's time and payroll records (including the hours worked in each workweek) should be in Defendant's custody and control, pursuant to 29 C.F.R. § 516. However, the accuracy, completeness, and sufficiency of such records is at issue.

## COUNT I
## RECOVERY OF OVERTIME COMPENSATION UNDER THE FLSA

48. Plaintiffs re-allege and incorporate the allegations contained in Paragraphs 1 through 47 above

49. Defendant failed to pay Plaintiffs properly for all hours worked in excess of forty (40) in a workweek, in violation of the FLSA.

50. Plaintiffs are entitled to be paid time and one-half (1.5) their regular rate of pay for each hour worked in excess of forty (40) in a workweek.

51. Defendant's conduct, as alleged, constitutes a willful violation of the FLSA, within the meaning of 29 U.S.C. § 255(a).

52. Defendant's actions set forth above also constitute a violation of the time-keeping requirements set forth by the FLSA.

53. As a result of Defendant's willful violation of the FLSA, Plaintiffs have suffered damages and have incurred in attorney's fees, and costs.

**WHEREFORE**, Plaintiffs demand:

    a. Judgment against Defendant for an amount equal to Plaintiffs' unpaid back wages at the applicable Federal overtime rate;

    b. An amount equal to Plaintiffs' overtime damages as liquidated damages;

    c.    To the extent liquidated damages are not awarded, an award of prejudgment interest;

    d.    Judgment against Defendant stating that Defendant's violations of the FLSA were willful;

    e.    A declaratory judgment that Defendant's practices as to Plaintiffs were unlawful, and grant Plaintiff equitable relief;

    f.    All reasonable costs and attorney's fees incurred in prosecuting this claim; and

    g.    Such further relief as this Court deems just and equitable.

## COUNT II
## FLORIDA COMMON LAW UNPAID WAGES VIOLATION

54. Plaintiffs re-allege and incorporate the allegations contained in Paragraphs 1 through 47 above.

55. During the period of their employment, Plaintiffs performed work for Defendant and Defendant agreed to compensate Plaintiffs on a commission basis, and in lieu thereof, at an hourly rate.

56. Defendant failed to return earned rerserve amounts to Plaintiffs, and to compensate Plaintiffs for all commissions earned per the terms agreed to, nor pay Plaintiffs an hourly rate.

57. As a result of the foregoing, Plaintiffs have suffered damages and have incurred in attorneys' fees and costs.

58. Unpaid commissions are considered wages pursuant to Florida Law.

59. Pursuant to Section 448.08, Fla. Stat., Plaintiffs are entitled to reasonable attorneys' fees and costs incurred in the prosecution of their unpaid wages claim.

**WHEREFORE**, Plaintiffs demand:

    a. Judgement against Defendant for an amount equal to the unpaid commissions owed Plaintiffs;

    b. All costs and attorney's fees incurred in prosecuting these claims in accordance with Fla. Stat. § 448.08; and;

    c. Such further relief as the Court deems just and equitable.

### COUNT III
### FLSA MINIMUM WAGE VIOLATIONS

60. Plaintiffs re-allege and incorporate the allegations contained in Paragraphs 1 through 47 above.

61. Defendant did not pay Plaintiffs the minimum wage required by the FLSA.

62. The actions of Defendant set forth above of failing to pay Plaintiffs the Federal minimum wage constitutes a violation of 29 U.S.C. §207.

63. Defendant's actions set forth above also constitute a violation of the time-keeping requirements set forth by the FLSA.

64. As a result of Defendant's willful violation of the FLSA, Plaintiffs have suffered damages and have incurred in attorney's fees, and costs.

**WHEREFORE**, Plaintiffs demand:

    a. Judgment against Defendant for an amount equal to Plaintiffs' unpaid minimum wage differential;

    b.    An amount equal to Plaintiffs' minimum wages owed, as liquidated damages;

    c.    To the extent liquidated damages are not awarded, an award of prejudgment interest;

    d.    Judgment against Defendant stating that Defendant's violations of the FLSA were willful;

    e.    A declaratory judgment that Defendant's practices as to Plaintiffs were unlawful, and grant Plaintiff equitable relief;

    f.    All reasonable costs and attorney's fees incurred in prosecuting these claims; and

    g.    Such further relief as this Court deems just and equitable.

## COUNT IV
## CIVIL DAMAGES FOR FRAUDULENT FILING OF INFORMATION RETURNS PURSUANT TO 26 USC §7434

65. Plaintiffs re-allege and incorporate the allegations contained in Paragraphs 1 through 47 above.

66. By failing to provide Plaintiffs with W-2 forms for all of the tax years during which Plaintiffs were employed by Defendants, and failing to properly record, account for, and report to the IRS all of the monies paid to Plaintiffs as compensation for all of the hours Plaintiffs worked during the course of their employment, Defendants filed fraudulent information returns with the IRS, in violation of 26 U.S.C. § 7434.

67. Under the Internal Revenue Code, 26 U.S.C. § 7434, "[if] any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such return."

**WHEREFORE**, Plaintiffs demand:

    a. Costs attributable to resolving deficiencies, damages of $5,000.00 for Plaintiff, and damages resulting from the additional tax debt and additional time and expenses associated with any necessary correction.

    b. That Defendants be ordered to take all the necessary steps to correct the above-identified information returns.

    c. All reasonable costs and attorney's fees incurred in prosecuting these claims; and

    d. Such further relief as the Court deems just and equitable.

### DEMAND FOR JURY TRIAL

Plaintiff requests a jury trial to the extent authorized by law.

Dated this 20th day of February, 2018.   Respectfully submitted,

**CYNTHIA GONZALEZ P.A.**
4023 North Armenia Ave.,
Suite 240
Tampa, Florida 33607
Telephone (813) 333-1322
Fax (866) 593-6771

*s/ Cynthia Gonzalez*
Cynthia M. Gonzalez
Florida Bar No. 53052
Attorney for Plaintiff
cynthia@wagesdue.com

*s/ Luis Roberto Amadeo*
Luis Roberto Amadeo
Florida Bar No. 0565865
Attorney for Plaintiff
amadeo@wagesdue.com